*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re J. POINTER, Minor.

UNPUBLISHED
February 7, 2019

No. 343702 & 343843
Ingham Circuit Court
Family Division
LC No. 17-000108-NA

Before: CAMERON, P.J., and BECKERING and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent-mother and respondent-father appeal by right an order terminating their parental rights to their daughter, JP, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue), MCL 712A.19b(3)(g) (proper care or custody), and MCL 712A.19b(3)(j) (risk of harm to child). We affirm.

## I. FACTS

In January 2014, the Department of Health & Human Services (DHHS) received information that mother had a substance abuse problem and was improperly supervising her children.[1] DHHS initially provided support services and did not remove the children from her care. In 2016, mother attended inpatient substance abuse rehabilitation programs. During this time, DHHS was informed that she had used drugs in the presence of her children and improperly supervised JP. Mother subsequently attended substance abuse treatment for cocaine and heroin abuse at the American Addiction Center in Florida. In January 2017, father, who had not yet established parentage, advised that he had removed JP from mother's care prior to her admission in a substance abuse treatment program. On January 12, 2017, Sara Elsie, a DHHS caseworker, spoke with mother, who indicated that she was still in treatment. Mother openly admitted to using substances in the presence of JP and that this was her third rehabilitation program admission. Mother also told Elsie that father was a drug dealer who kept heroin in a safe in her home.

---

[1] Mother's other child was placed with his father.

DHHS held a family team meeting later that month. Mother indicated that she was unemployed, had no income, was homeless, could not provide a safe living environment for JP, was attempting to obtain and maintain her sobriety, was exploring attending a sober living program, and had started attending Narcotics Anonymous (NA) meetings. She stated that she had not given anyone legal authority to care for JP. Mother also stated that when father brought JP for a visit the previous day, his car smelled of marijuana.

DHHS filed a removal petition with respect to mother in January 2017. The court took temporary jurisdiction over JP, authorized the removal petition, and placed JP with her maternal grandmother. Father was ordered to establish paternity within 14 days. Both respondents later executed an affidavit of parentage for JP.

In March 2017, DHHS identified mother's barriers to reunification as drug abuse, consumption of narcotics in the presence of her children, inadequate housing, and unemployment. Mother had undergone a substance abuse assessment, completed random drug screens, and exercised supervised parenting time with JP. DHHS did not recommend that mother attend parenting classes or that she undergo a psychological evaluation. However, DHHS noted that mother's mental health was a concern because she had been diagnosed with anxiety and severe depression. The court found that JP's relative placement continued to be appropriate. After the hearing, the court entered an order of disposition as to mother, and ordered her to obtain and maintain lawful employment, refrain from possessing and using alcohol and drugs, keep all substance abuse counseling appointments, submit to random drug and alcohol testing, attend NA meetings, participate in group parenting classes, and attend parenting time visitations with JP.

In April 2017, DHHS denied the maternal grandmother's request to obtain a guardianship over JP because, after a home study with father, it found that he was able and willing to care for JP. However, in May 2017, DHHS reversed this determination, noting:

> [Father] has a medical marijuana card but denied any history of drug use including [h]eroin, [c]rack, and [c]ocaine. On 05/03/2017 [he] completed a random drug test at [DHHS] and tested positive for [h]eroin, [c]ocaine, and THC. It is concerning that [he] is being dishonest about drug use and history. [He] is also currently unemployed; he reported to the previous worker that he was laid off and he has not reported any new employment possibilities. During the [child protective services (CPS)] investigation there were concerns of [father's] involvement with drugs due to his criminal history and self-disclosure of selling [c]ocaine approximately three years ago. The CPS worker, Ms. Sara Elsie, reported that the case plan included making [him] a respondent father after establishing legal parentage. A [S]anders[2] petition is being drafted and will be filed with the [c]ourt to make [him] a respondent due to the listed concerns.

---

[2] See *In re Sanders*, 495 Mich 394, 422; 852 NW2d 524 (2014) (requiring a separate adjudication with respect to a second parent).

Later that month, father was added as a respondent to the removal petition. The petition alleged that he had no source of legal income, an extensive criminal history, and a substance abuse problem. DHHS alleged that despite "den[ying] having a substance abuse problem, and report[ing] that he has never used [h]eroin, [c]rack, [c]ocaine, or any other drugs aside from medical marijuana," on "05/03/2017 and 05/17/2017 [he] tested positive for [h]eroin, [c]ocaine, and [m]arijuana." The court authorized the petition against father and ordered continued relative placement for JP.

Father's parent agency treatment plan required that he (1) "abstain from using illegal substances and medication that has not been prescribed to him," (2) "complete random drug tests," (3) "be referred for substance abuse assessment" and "participate in the recommendations," (4) "attend all scheduled parenting times with JP," (5) "participate in parenting classes," (6) "obtain and maintain valid and lawful employment," (7) "apply for financial assistance as needed," (8) "actively search for valid and lawful employment," and (9) "provide verification of any employment" to DHHS. At a pretrial hearing in June 2017, father admitted that he had a criminal history, including misdemeanor and felony offenses relating to controlled substances, that he had tested positive for drugs twice in 2017, and that he had no source of income. He stated that since JP was born, she had been in his and his mother's care intermittently. The court entered an order of adjudication as to father and found that due to an unfit home environment, there were reasons to exercise jurisdiction. Later that month, DHHS modified father's parent agency treatment plan to refer him for a psychological evaluation to determine if further services were needed. DHHS eliminated recommendations pertaining to employment.

In late June 2017, DHHS identified father's barriers to reunification as substance abuse, emotional instability, a parenting skills deficiency, and unemployment. DHHS reported that father had missed only one parenting time visitation with JP during the period. DHHS described father as cooperative and engaging with JP. The court continued JP's placement with her maternal grandparents and ordered that father comply with DHHS's recommendations.

In August 2017, DHHS reported that mother had participated in counseling services, was participating in the drug court program, and had returned to inpatient substance abuse treatment after relapsing on Vicodin, heroin, cocaine, kratom, and methamphetamine. DHHS reported that father was undergoing random drug tests but had failed to attend all screenings. In addition, father had tested positive for cocaine use. However, DHHS reported that his parenting time with JP was going well and that JP was happy to see him. The court continued JP's relative placement and required compliance with DHHS recommendations.

In November 2017, the court was notified that mother had been in the hospital after relapsing on drugs. DHHS indicated that father had appropriate housing, a support system, and interacted appropriately with DHHS workers. However, he had tested positive for cocaine in August 2017 and for trace amounts of cocaine in October 2017; the trace amounts could have come from "handling it." During the relevant period, father had demonstrated appropriate and practical parenting skills, did "not currently have any reported income" but had "not reported any financial difficulty," and had completed a substance abuse screening inventory indicating that he was at low risk for substance abuse. However, he did not have an actual substance abuse assessment; the results of the inventory were solely based on self-reported information. DHHS

modified recommendations for father and required him to find and attend a parenting class, and to actively search for employment.

In December 2017, father was arrested on charges relating to the delivery or manufacture of controlled substances.[3] He was incarcerated but was released from jail after posting bond in early January 2018. As of February 15, 2018, he had made only one contact with DHHS since being released from jail, and he had not participated in DHHS services, drug screenings, counseling, or parenting time since his arrest. He was deemed ineligible by substance abuse counselors for substance abuse treatment due to his inventory responses. Meanwhile, mother was still receiving substance abuse treatment and random drug testing. DHHS recommended that she attend 12-step NA meetings at least three times per week and participate in individual therapy through community mental health. DHHS reported that she had entered residential substance abuse treatment in February, but was discharged approximately two weeks later because she had smuggled in a prescription drug and was using it illicitly. DHHS further reported that mother had not made progress toward reunification with JP because she continued to use illicit substances. She was later discharged from drug court before completing the program.

Later in February 2018, father contacted DHHS to resume services. DHHS made a referral for random drug testing in March 2018, but was unable to contact father to inform him of the new referral. In March 2018, DHHS filed a petition to terminate respondents' parental rights.

At the termination hearing in April 2018, caseworker Brittany Massa testified that she had worked with respondents and JP for approximately one year. She testified that the initial barriers to reunification were mother's substance use, and her issues with housing and employment, emotional stability, and parenting skills. Massa believed that mother did not benefit from the services made available to her. Massa had concerns about mother's emotional state and stability, noting that at times she would remain in bed for "weeks at a time" and had expressed suicidal ideation. Massa believed this emotional instability affected mother's parenting skills.

Massa stated that guardianship for JP would not be appropriate due to JP's young age, and that permanency through adoption was the "most final" solution. She also noted that JP's grandparents were not licensed legal guardians. Massa recommended that the court terminate respondents' parental rights to JP. The court found that termination was proper and determined that termination was in the best interests of JP.

---

[3] Michigan State Police Detective Les Rochefort testified at respondents' termination trial that he had investigated father in the past for controlled substances violations and had worked with a confidential informant to purchase cocaine from father. In the course of his investigation, he searched a home that he believed was father's because he found a piece of mail addressed to him at the address. A search of the residence uncovered approximately 1,700 grams of powdered cocaine, 150 grams of crack cocaine, and 600 grams of fentanyl. Detective Rochefort stated that this amount was consistent with dealing drugs, and that he had witnessed father conduct a drug deal on October 6, 2017.

## I. ANALYSIS

### A. REASONABLE EFFORTS

Father argues that DHHS failed to provide sufficient reunification services. He failed to preserve this issue by objecting to the adequacy of services when the case service plan was adopted or soon afterward. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012), quoting *In re Terry*, 240 Mich App 14, 27; 610 NW2d 563 (2000).[4] Unpreserved issues are reviewed for plain error affecting substantial rights. *In re Utrera*, 281 Mich App 1, 8-9; 761 NW2d 253 (2008). Three requirements must be met to avoid forfeiture under the plain error rule: (1) the error must have occurred, (2) the error was plain, i.e., clear or obvious, (3) and the plain error affected substantial rights. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App at 9.

"Reasonable efforts to reunify the child and family must be made in all cases" except under certain circumstances not present in this case. MCL 712A.19a(2). "[T]he court must consider whether efforts by the supervising agency to reunify a family are reasonable." *In re Rood*, 483 Mich 73, 98; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.) (quotation marks and citation omitted). Although DHHS "has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. "Not only must respondent cooperate and participate in the services, [he] must benefit from them." *In re TK*, 306 Mich App 698, 711; 859 NW2d 208 (2014).

Father takes issue with DHHS's failure to obtain a psychological assessment for him, and its failure to notify him of a referral for drug testing after he was released from jail in January 2018. He argues that had he been provided with a psychological evaluation and drug tests after his release from jail, his awareness of his substance abuse issue would have improved, which would have allowed him to reunite with JP. However, throughout the pendency of the proceedings, father denied that he had a substance abuse problem. Moreover, while he was undergoing random drug screens for the seven months leading up to his arrest, he continued to test positive for cocaine and heroin while denying that he was using drugs. DHHS referred him for an evaluation, and although he completed a substance abuse inventory, his lack of communication with the service provider foreclosed a full psychological evaluation. The results of the self-reporting inventory showed that he was at a low risk for substance abuse. When his persistent substance abuse denials, which appear to have been reflected in the inventory's results, are contrasted with his persistent positive drug tests, there is no indication of any failure on DHHS's part. Rather, the results demonstrate that father had an opportunity to be honest about his drug use with a service provider competent in methods to assist him, and receive accordant services, but instead, gave answers that rendered the inventory a useless tool.

---

[4] The Michigan Supreme Court recently expressed disapproval of this rule, but declined to overturn it. *In re Hicks/Brown*, 500 Mich 79, 88-89; 893 NW2d 637 (2017).

DHHS's failure to inform father of a renewed drug testing referral after his release from jail is muted by the fact that father only now on appeal recognizes his need to remedy his substance abuse issues. During the pendency of the case, DHHS noted that father did not understand the effect that his involvement with drugs and his abuse of substances could have on JP. There is no evidence in the record, beyond the fact that father contacted DHHS in February 2018 after his release from jail to again work with the Department, that father would have changed his duplicitous behavior in continuing to use substances while denying a substance abuse issue. It is unclear what benefit, if any, father would have received from a psychological assessment or continued drug tests given his history of denying substance abuse. Thus, he has not established the prejudice necessary to demonstrate plain error.

DHHS cannot be said to have failed in referring father to parenting classes, because the record demonstrates that DHHS actually required him to find and attend a parenting class on his own. That he did not do so is not attributable to any failure on DHHS's part. Additionally, while a parenting class may have provided father with better parenting skills and strategies, DHHS reported that his parenting skills were adequate and that he engaged appropriately with JP. A parenting class would not logically have led to a change in father's truthfulness with himself about his substance abuse issue. Thus, he has not demonstrated plain error from the lack of provision of any parenting class.

## B. GROUNDS FOR TERMINATION

Father also argues that the court erred in finding grounds for termination of his parental rights. This Court reviews a determination whether statutory grounds exist to terminate parental rights for clear error. *In re Trejo Minors*, 462 Mich 341, 356-357, 373; 612 NW2d 407 (2000). "Clear error exists when some evidence supports a [determination or] finding, but a review of the entire record leaves the reviewing court with the definite and firm conviction that the lower court made a mistake." *In re Dearmon*, 303 Mich App 684, 700; 847 NW2d 514 (2014). This Court must defer to the court's special opportunity to observe the witnesses. *Id*.

To terminate parental rights, the trial court must find clear and convincing evidence of one or more of the statutory grounds set forth in MCL 712A.19b(3). *In re Olive/Metts*, 297 Mich App 35, 41; 823 NW2d 144 (2012). In this case, the court terminated parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which at the time of the termination proceedings[5] provided for termination of parental rights if:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

---

[5] MCL 712A.19b(3)(g) has since been substantively amended. 2018 PA 58, effective June 12, 2018. The amendment does not affect the analysis of this case because respondent's parental rights were terminated on May 16, 2018.

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

### 1. CONDITIONS LEADING TO ADJUDICATION

Father argues that because DHHS failed to provide him with the referrals discussed above, the court erred in finding that he had not rectified his substance abuse issue. However, assuming for purposes of discussion that his substance abuse was not a valid reason for finding that a condition for adjudication persisted, his criminality was another condition leading to adjudication that he had not rectified. At the beginning of the case, mother identified father as a drug dealer and said that he kept narcotics in her home. Father stated that he was unemployed and implicitly denied dealing drugs, but never had financial difficulties. Father sold a confidential informant drugs in 2017. In December 2017, he was arrested on drug charges. As of the termination hearing, his criminal case was still pending and he likely faced a period of imprisonment. This evidence demonstrates that father did not rectify his criminality within 182 days of the entry of the first dispositional order. Thus, termination of father's parental rights under MCL 712A.19b(3)(c)(*i*) was proper, and the court did not clearly err in finding so.

### 2. PROPER CARE AND CUSTODY

Father also argues that the court erred in ordering termination under MCL 712A.19b(3)(g). He maintains that he always provided JP with proper care and custody while she was in his care, and that in 2017, DHHS determined that he was a fit parent. However, while father occasionally visited with JP, and those visits were deemed appropriate by DHHS, they do not demonstrate that father ever provided JP proper care or custody.

Mother stated that she never gave father legal or physical custody of their child. Before he established parentage, JP was placed with her grandmother and remained in the grandmother's care until the termination hearing. The placement occurred before father's short stint in jail from December 2017 to January 2018. During the course of the case, father never had a legal means of income, and he was arrested for being involved in the drug trade. Father consistently tested positive for cocaine and heroin use, despite court orders and DHHS recommendations not to use drugs. Despite these consistently positive drug test results, he denied he had a substance abuse issue. A parent's failure to comply with a service plan is

evidence of the parent's failure to provide proper care and custody. *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). Although father asserted at the termination hearing that he would be compliant with DHHS and the court going forward, his past actions and his failure to address his substance abuse and criminality provided little support for that contention. Father never provided proper care or custody for his child, and his conduct during the pendency of this case amply supported the conclusion that there was no reasonable expectation that he would be able to do so within a reasonable time considering his child's age.

### 3. REASONABLE LIKELIHOOD OF HARM

Finally, father argues that the court erred in ordering termination under MCL 712A.19b(3)(j). Although there is no evidence that father harmed JP in the past, his failure to address his serious issues of criminal behavior and substance abuse provided clear and convincing evidence that there was a reasonable likelihood, based on his conduct, that JP would be harmed if placed in his care. Notably, he was suspected of dealing large amounts of heroin, fentanyl, and cocaine, substances that would pose a risk of harm to a young child. Accordingly, the court did not clearly err in finding that there was a reasonable likelihood that JP would be harmed if returned to father's care.

### C. BEST INTERESTS

Both respondents argue that the trial court erred in determining that termination of parental rights was in JP's best interests. This Court reviews the best interest determination for clear error. *In re Trejo*, 462 Mich at 356-357.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." *In re Olive/Metts Minors*, 297 Mich App at 41-42. The determination of a child's best interests is made on the basis of the preponderance of the evidence. *In re Moss*, 301 Mich App 76, 89; 836 NW2d 182 (2013). Factors to consider include child-parent bonding, parenting skills, the child's need for permanency, stability, and finality, and also how the home placement compares with the parent's home. *In re Olive/Metts*, 297 Mich App at 41-42. The court may also consider the length of time the child was in care, the likelihood that the child could be returned to the parent's home within the foreseeable future, and compliance with the case service plan. *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 64; 874 NW2d 205 (2015), citing *In re Frey,* 297 Mich App at 248-249. In addition, the court may consider "the [child's] well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. However, a child's placement with relatives weighs against termination, MCL 712A.19a(6)(a), and the court must expressly consider the child's relative placement in making its best-interest determination. *Olive/Metts*, 297 Mich App at 43.

In making its best-interest determination, the court considered JP's age, respondents' lack of compliance with their case service plans, mother's substance abuse, father's continued criminality, JP's need for permanency, and the likelihood that JP could not be reasonably returned to their care in the foreseeable future. The record demonstrates that each respondent failed to recognize the dangers posed by their substance abuse issues, that respondent father did

not recognize the danger posed by his criminality, and that both continued using drugs and father continued being involved in criminal activity throughout the pendency of the case, even with the considerable assistance and guidance of the court, DHHS, and service providers.

Mother's emotional and substance abuse issues persisted throughout the case. She was hospitalized in relation to her substance abuse, had suicidal ideations, received inpatient substance abuse treatments, and despite receiving extensive therapy and counseling, as recently as two months before the termination hearing, was discharged from a residential treatment facility after being caught with a smuggled illicit drug. It is apparent that mother had not addressed her substance abuse issues by the termination hearing, and perhaps had regressed. There were indications that mother's parenting skills were affected by her substance abuse.

Throughout the case, father denied substance abuse, despite testing positive for cocaine and heroin use, and denied dealing drugs, despite being arrested for doing so during the pendency of the case. He initially admitted to selling cocaine for three years before his involvement with DHHS, and mother stated that she stored heroin for him before she entered rehabilitation. Although he denied selling drugs during the pendency of the case, he was not employed, and never reported financial difficulties. He was identified by the Michigan State Police as being involved in the drug trade, and was arrested in connection with the manufacture and delivery of significant amounts of cocaine, heroin, and fentanyl. The Michigan State Police witnessed him sell drugs.

In April 2018, when the court was considering terminating his parental rights, father was facing likely imprisonment for the manufacture or delivery of controlled substances after being arrested in December 2017. Although a criminal defendant is innocent until proven guilty, US Cons, Am VI, one may infer from the inconsistencies regarding his personal drug use and drug dealing that he has demonstrated duplicitous behavior during the course of the case. This behavior undermines any argument that father had addressed the conditions that caused him to come within the court's jurisdiction.

Respondents contend that the court did not properly give credence to the fact that JP was in a voluntary relative placement. However, the court did indeed consider this fact. The trial court nevertheless concluded that given mother's persistent drug addiction, father's inability to recognize his substance abuse issue, their consistent positive drug screens, and their uncertain futures; both parents would be unable to provide JP with requisite support, permanency, and stability in the future. Considering the considerable evidence presented that both respondents had not addressed their substance abuse issues, and that each faced uncertain futures at the time of the termination hearing due to substance abuse and criminality, it was not clearly erroneous for the court to determine that, despite JP's relative placement with her grandmother, long-term guardianship was not an option "considering her high need for permanence and finality and stability," and termination of respondents' parental rights was in her best interests.

Affirmed.

/s/ Thomas C. Cameron
/s/ Jane M. Beckering
/s/ Amy Ronayne Krause